IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

MICHAEL JOHN THOMAS GRAY,   )
                                                               )
     Plaintiff,                       )
                                                               )
vs.                                                    )     Case No.  09-cv-444-PMF
                                                              )
MICHAEL J. ASTRUE,            )
COMMISSIONER OF SOCIAL   )
SECURITY,                          )
                                                             )
     Defendant.                     )

## MEMORANDUM AND ORDER

**FRAZIER, Magistrate Judge:**

Plaintiff, Michael J. T. Gray, seeks judicial review of a final decision of the Commissioner of Social Security denying his June, 2007, applications for disability benefits and supplemental security income. Gray's applications were rejected following an administrative determination that he was not disabled. The administrative decision became final when the Appeals Council declined to review the decision reached by an Administrative Law Judge (ALJ). Judicial review of the Commissioner's final decision is authorized by 42 U.S.C. § 405(g) and 42 U.S.C. §1383(c)(3).

To receive disability benefits, a claimant must be "disabled." A disabled person is one whose physical or mental impairments result from anatomical, physiological, or psychological abnormalities which can be demonstrated by medically acceptable clinical and laboratory diagnostic techniques and which prevent the person from performing previous work and any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A), 1382c(a)(3)(B), 1382c(a)(3)(D).

The Social Security regulations provide for a five-step sequential inquiry that must be followed in determining whether a claimant is disabled.  20 C.F.R. § 404.1520; 416.920.  The Commissioner must determine in sequence: (1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets or equals one listed by the Commissioner, (4) whether the claimant can perform his or her past work, and (5) whether the claimant is capable of performing any work in the national economy.  *Clifford v. Apfel,* 227 F.3d 863, 868 (7th Cir. 2000).  If the claimant does not have a listed impairment but cannot perform his or her past work, the burden shifts to the Commissioner at Step 5 to show that the claimant can perform some other job.  *Id*.

At the time of the ALJ's decision, Gray was 30 years old.  He had the equivalency of a high school education and relevant work experience as a drywall hanger.  The ALJ evaluated Gray's applications through the last step of the sequential analysis and concluded that he had severe physical and mental ailments: degenerative disc disease of the cervical and lumbar spine, bipolar disorder, and a history of alcohol dependence.  These ailments did not meet or equal one of the impairments listed in the Social Security regulations.  The ALJ also determined that Gray retained the ability to perform work except for jobs requiring him to lift or carry objects weighing more than 25 pounds frequently or more than 50 pounds occasionally; stand or walk more than 6 hours in an 8-hour workday, or perform more than simple work activity.  While these limitations prevented Gray from performing his past job as a drywall hanger, the ALJ found that Gray was not disabled because he could still perform a number of packer and assembly jobs (R. 9-22).

Gray challenges the Commissioner's decision on several grounds, discussed below. Under the Social Security Act, a court must sustain the Commissioner's findings if they are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla" of proof. The standard is satisfied by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Because the Commissioner of Social Security is responsible for weighing the evidence, resolving conflicts in the evidence, and making independent findings of fact, this Court may not decide the facts anew, reweigh the evidence, or substitute its own judgment for that of the Commissioner. *Id*. However, the Court does not defer to conclusions of law, and if the Commissioner makes a serious error, the decision will be reversed unless the Court is satisfied that no reasonable trier of fact could have come to a different conclusion. *Sarchet v. Chater*, 78 F.3d 305, 309 (7th Cir. 1996).

In their briefs, the parties have adequately summarized the medical evidence and other portions of the administrative record. To the extent necessary, relevant portions of the record are discussed below.

### I.     Evidence Supporting ALJ's Assessment of Mental Impairment

Gray offers several arguments in support of his position that the ALJ's decision is not supported by substantial evidence. Initially, he points generally to his testimony and testimony provided by Ms. Milazzo, claiming that this evidence is consistent with hospitalization records for symptoms of depression and anxiety. This argument is evaluated as a challenge to evidence supporting the ALJ's assessment of the functional severity of Gray's mental ailment.

ALJs rate the degree of a person's mental functional limitation based on the extent to which the impairment interferes with the ability to function independently, appropriately, effectively, and on a sustained basis. 20 C.F.R. § 404.1520a(c). The focus is on four areas: activities of daily living; social functioning; concentration, persistence, and pace; and episodes of decompensation. *Id*. The first three areas are rated on a five point scale ranging from none to extreme. The last area is rated on a four-point scale ranging from none to four or more. *Id*.

At the hearing, plaintiff described his treatment efforts with different health care providers. He explained that he had recently been taking two bipolar medicines (Lamictal and Klonopin), and a sleep aid (trazodone). He had tried other medications as well, including a series of injections which helped him stay sober. He described sleeplessness, poor appetite with weight loss, paranoia, memory deficits, and poor concentration. He also described mood swings and frequent crying spells. He indicated he had few social contacts and engaged in few activities outside of self-care and child-care responsibilities. He described anxiety attacks and panic attacks occurring about twice a week. He estimated that he could perform some household chores for short periods of time and said he could prepare simple meals using a microwave. Ms. Milazzo did not testify (R. 23-62).[1]

Medical records show that plaintiff was hospitalized in January and May, 2003; March 17, 2006; June 20-23, 2007; and May 20-21, 2008 (R. 433-465, 512-534, 637-647, 674-703). He received treatment for various ailments, including facial fractures from a motor vehicle collision, recurrent major depressive disorder, bipolar disorder, drug overdose, alcohol intoxication, suicidal gesture, and anxiety disorder.

---

[1] A statement prepared by Ms. Milazzo was submitted to the Appeals Council following the ALJ's decision (R. 272-276). The Court does not consider such evidence when reviewing an ALJ's findings. *Luna v. Halala*, 22 F.3d 687, 689 (7th Cir. 1994).

The ALJ evaluated plaintiff's testimony and decided that while his ailments produced the symptoms he described, the intensity, persistence and limiting effects described were not entirely credible (R. 18). The ALJ considered plaintiff's testimony along with the hospitalization records and other evidence and rated the degree of functional loss resulting from plaintiff's mental impairment as follows: moderate restrictions on plaintiff's activities of daily living; mild difficulties maintaining social functioning, concentration, persistence, or pace; moderate restrictions on plaintiff's ability to understand, remember, and carry out detailed instructions; and no repeated episodes of decompensation of extended duration, absent substance abuse (R. 20).

A review of the record reveals substantial evidence supporting the ALJ's assessment of the functional severity of plaintiff's mental health impairment. Plaintiff's hospitalizations in January, 2003; March, 2006; and June, 2007; reveal little information about his functional limitations during the relevant period of time. The most recent hospitalization was an overnight stay. On that occasion, plaintiff's mood was depressed and he had a cut on his neck which was assessed as a suicidal gesture. His thought process was logical, his affect was appropriate, his insight was good, his memory was intact and his judgment was within normal limits (R. 686, 696). The diagnoses included alcohol intoxication, supported by laboratory reports showing a level of alcohol well over the standard for legal intoxication (R. 688, 737, 739). Progress notes showed that plaintiff was calm, cooperative and responsive. The medication given was a single dose of Ativan, an anti-anxiety agent. Plaintiff's symptoms subsided overnight and he was discharged with a recommendation to avoid alcohol and drugs, continue outpatient treatment, and take his current medications (R. 697). A rational ALJ was not required to infer from this evidence that plaintiff's mental ailment produced a marked or extreme degree of limitation in any of the relevant functional categories on a sustained basis.

Other evidence substantially supports the ALJ's assessment of plaintiff's mental functional limitations, including hospital records, laboratory reports, records of outpatient care, and findings and opinions of examining and non-examining physicians (R. 552-568, 668-670, 676-696, 730-34, 739-40, 749-50, 752-757). This evidence is adequate to persuade a rational person that the functional limitations caused by plaintiff's mental impairment were in the mild to moderate range.

Plaintiff also argues that the ALJ ignored global functioning assessments other than the 53 rating from Joy Webster. This statement is incorrect. In addition to Joy Webster's assessment, the ALJ considered a lower rating (45) selected by Dr. Loynd in July, 2008 (R. 16). Because Dr. Loynd assessed plaintiff's condition at a time when he was not taking psychiatric medications, the ALJ was not required to view this evidence as a description of plaintiff's overall functional performance (R. 749-750).

Plaintiff also challenges the ALJ's assessment of his subjective pain complaints. Because this argument coincides with a challenge to the ALJ's credibility assessment, it is discussed separately.

Plaintiff also argues that the evidence does not support the ALJ's finding that his bipolar disorder was generally well-controlled with prescribed psychotropic medication since May, 2008. He points to Dr. Loynd's July, 2008, report, which includes a GAF score of 45.

The evidence describing the severity of plaintiff's mental ailments after May, 2008, is somewhat conflicting. While Dr. Loynd gave a rather severe GAF assessment, that assessment does not take into account plaintiff's response to psychiatric medications. During his interview with Dr. Loynd, plaintiff was alert and oriented to person, place and time. He maintained good eye contact, showed no psychomotor agitation, used regular speech, had logical and goal-directed thoughts, and

described no hallucinations or delusions. Plaintiff had sweaty palms, appeared "mildly anxious and slightly depressed," and his insight and judgment were deemed "fair." (R. 750). During the same period of time, Dr. Taca assessed plaintiff's mental status numerous times and adjusted his medications. She noted fewer mood swings, lower anxiety levels, and fewer racing thoughts. She reported that plaintiff was "doing well" with the medicine prescribed by Dr. Loynd and extended follow-up visits from 2-week intervals to 4-8 week intervals (R. 752-757). A rational person could infer from this evidence that plaintiff's symptoms during this period were generally well controlled by medications. This aspect of the ALJ's decision must be upheld. *Brooks v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

## II.     ALJ's Evaluation of Evidence of Substance Abuse

Plaintiff argues that the ALJ erred by failing to determine whether his alcoholism was a contributing factor to the determination of disability. He relies on 20 C.F.R. § 404.1535, which implements the policy that claimants may not be found to be disabled if drug or alcohol abuse is a "contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C); 20 C.F.R. § 404.1535(a).

Defendant responds that this analysis was not required because the ALJ completed the sequential analysis without finding that Gray was disabled. The Court agrees with the defense. The additional step of determining whether alcohol or drug abuse is a contributing factor to a determination of disability is reserved for those situations where the ALJ makes an initial determination that the claimant is disabled. Here, while the ALJ found that plaintiff had a history of alcohol dependence, he also found that plaintiff was not disabled because he could perform a substantial number of jobs in the national economy.

### III. Evaluation of Mental Impairment Using Special Technique

Plaintiff argues that the ALJ failed to document application of the special technique for evaluation of mental impairments by rating the specific degree of limitation in the four functional areas. This is incorrect. The ALJ's decision shows that the technique was used to rate plaintiff's limitations in the first three categories in the mild to moderate range, and the fourth category was rated as none (R. 20). This analysis satisfies the applicable legal standard. 20 C.F.R. § 404.1520a(e).

### IV. Step 2 Analysis – Assessment of Impairment Severity

Plaintiff argues that the ALJ erred in failing to find that his depression, migraine headaches, anxiety attacks, panic attacks, back and neck injuries were severe. Defendant responds that the ALJ did not err because he decided this step in plaintiff's favor and proceeded beyond Step 2 to subsequent steps in the evaluation process. Because Step 2 is merely a threshold requirement, the ALJ's failure to identify particular ailments as "severe" at this step is not reversible error. *Castile v. Astrue*, No. 09-3917,___ F.3d ___ (7th Cir. Aug. 13, 2010). The purpose of this step is served by a finding that plaintiff had an impairment or combination of impairments that are severe, meaning that there is more than a minimal effect on basic work activities. Because ALJs consider the combined impact of all impairments, regardless of the level of severity, when they proceed beyond Step 2, any error does not detract from the validity of the ultimate decision. 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. §§ 404.1523, 404.1545(a)(2), 416.923; 416.945(a)(2).

### V. Analysis of Medical Opinion Evidence

Plaintiff argues that the ALJ violated 20 C.F.R. § 404.1527 and Social Security Ruling 96-2p by ignoring medical source opinions. Defendant responds that the argument is inadequately

developed and therefore waived. Alternatively, defendant maintains that the ALJ adequately considered opinions from treating sources.

Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of an impairment. Examples include judgments about symptoms, diagnosis, prognosis, a statement about the activities that can be performed despite the impairment, and physical or mental restrictions. 20 C.F.R. § 404.1527(a)(2). When a treating source offers a medical opinion that is well-supported and not inconsistent with other substantial evidence, it must receive controlling weight. SSR 96-2p. When a treating source opinion is not given controlling weight, the ALJ must explain the weight given the opinion. 20 C.F.R. § 404.1527(f). To permit meaningful review, they must articulate – at a minimal level – their reasons for accepting or rejecting entire lines of evidence. *Herron v. Halala*, 19 F.3d 329, 333 (7th Cir.1994).

To the extent this argument targets opinions provided by someone other than Dr. Parich or Dr. Loynd, the argument is underdeveloped. Although a legal framework is offered, there is no reference to a particular portion of the administrative record (Doc. No. 22, pp. 33-34). *See Ehrhart v. Secretary of Health and Human Services*, 969 F.2d 534 (7th Cir. 1992)(a reviewing court need not devote its time to arguments raised in a very opaque manner).

Dr. Parich evaluated plaintiff's physical condition on one occasion, in May, 2008. At that time, plaintiff sought treatment for symptoms he experienced after moving heavy items in a shed. Dr. Parich evaluated plaintiff's condition and detected muscle spasm and limited range of motion. He diagnosed chronic recurrent pain in the neck, shoulder, arm, lower back, and legs. He ordered tests, prescribed pain relief medicines and a muscle relaxant, and recommended physical therapy (R. 706). Dr. Parich did not evaluate plaintiff's response to this treatment.

The ALJ's analysis shows that he considered Dr. Parich's report when decided that plaintiff's physical ailments precluded the performance of heavy work (R. 15-20). Because Dr. Parich did not quantify plaintiff's symptoms, opine that plaintiff was unable to perform basic work tasks on a sustained basis, or evaluate plaintiff's response to treatment, the information was not particularly helpful to the ALJ's analysis. If the ALJ was required to specifically articulate the weight accorded to this evidence, the failure to do so is not reversible error. *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir.1989)(A case need not be remanded in quest of a perfect opinion absent a reason to believe that a different decision would be reached on remand).

Dr. Loynd evaluated plaintiff's mental status in July, 2008. He diagnosed a probable borderline personality with alcohol dependence in partial remission and assigned a GAF score of 45. At the time of the assessment, plaintiff had received only Vivitrol for alcohol dependence. Dr. Loynd devised an outpatient treatment plan including education, therapy, and medications and scheduled a followup visit (R. 749-50).

The ALJ's discussion shows that he considered this evidence (R. 16). Like Dr. Parich, Dr. Loynd did not describe plaintiff's response to treatment. Because other evidence showed that plaintiff responded favorably to the medication selected by Dr. Loynd, the ALJ's failure to assign specific weight to this evidence when evaluating plaintiff's overall degree of functional limitation is not reversible error. *Id*.

## VI.     Credibility Assessment

Plaintiff argues that the ALJ failed to accurately summarize his testimony and failed to provide specific reasons supporting the finding that his pain testimony was not entirely credible. Defendant responds that the ALJ properly assessed this evidence and listed numerous reasons for the adverse finding.

Credibility determinations are afforded special deference because ALJs have a unique ability to observe witnesses and evaluate testimony. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). However, when an ALJ bases the determination on serious errors in reasoning, remand is required. *Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004). The determination must:

> contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individuals statements and the reasons for that weight.

SSR 96-7p. A wide assortment of information may be considered when ALJs assess witness testimony. 20 C.F.R. §404.1529(c)(3); SSR96-7p.

Applying a ten-point scale, plaintiff rated his pain on a normal day as a 9 and on the day of the hearing as a 10. He took prescribed pain relief medication when he experienced severe pain and recently took Percocet after a fall. He estimated that he could lift items weighing up to 3 or 4 pounds, sit for ten or fifteen minutes on a good day, walk a few feet, climb 4 or 5 steps, push a vacuum for four or five minutes, and sit in a car for ten minutes. He could not bend or stoop. He cared for a 21-month old child during the day and also cared for a 10-year old child after school. He attempted to perform some light household chores; however, efforts to shop often ended with him sitting in the car due to pain. He described his pain as sharp, jabbing, and throbbing in his knees, calves and feet and shooting pain in his back, neck, legs and head. He also described severe headache pain three or four time a week. He could prepare simple meals using a microwave oven but could not perform yard work (R. 28-58).

The ALJ's summary of this testimony was basically accurate, with some minor omissions that do not significantly detract from the analysis (R. 18). The ALJ identified multiple reasons for discrediting plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms:

    – no medical evidence corresponds with the alleged onset date

    – plaintiff's daily activities are inconsistent with disabling symptoms and limitations

    – absent alcohol abuse, plaintiff has not required hospital treatment

    – absent alcohol abuse, plaintiff has required minimal conservative treatment

    – no records show that prescribed medications are ineffective when taken as prescribed

    – no records show that prescribed medications cause significant side effects

    – no records show that orthotic or assistive devices have been prescribed

    – positive clinical signs are present but not persistent or severe

    – records describe a normal, independent gait

    – records describe no significant joint or spine abnormality or range of motion limitation

    – records do not describe muscle atrophy or persistent muscle spasm

    – records do not describe grip or extremity weakness or bowel or bladder dysfunction

    – records do not describe reflex, motor or sensory loss, heat, redness, or swelling

    – plaintiff did not appear to be in any obvious credible physical discomfort

    – independent testimony from a lay witness was not offered

  Plaintiff argues that his description of the intensity of symptoms should have been found credible because he complained about pain and attempted to find pain relief after his first motor vehicle accident in 2002. The Court has reviewed the relevant portions of the record and is not persuaded that the ALJ's credibility finding is patently wrong.

  Plaintiff also argues that the ALJ failed to consider the severity of his neck and back injuries. The ALJ's discussion shows that the nature and severity of plaintiff's physical impairments were taken into account (R. 19).

  Plaintiff argues that insurance constraints kept him from consulting doctors, including a neurosurgeon, and that the ALJ should have considered this explanation. In summarizing the medical evidence, the ALJ noted that plaintiff had not sought or required treatment for injuries sustained in a March, 2006, motor vehicle accident during the period of alleged disability. The specific injuries referenced were facial fractures (R. 16). The last medical report pertaining to facial

fractures appears to be in late March, 2006 (R. 466-471). The Court is not persuaded that this comment reflects an explanation requiring explicit discussion of plaintiff's financial constraints.

Plaintiff also challenges the finding that no medical records coincide with the alleged onset of disability. Plaintiff refers to a hospitalization in June, 2007 (Doc. No. 22, p. 26). As defendant points out, this incident occurred a year after June 2, 2006, the date plaintiff claimed to be disabled (R. 136, 139). This argument lacks merit.

Plaintiff also challenges the ALJ's conclusion that his daily activities were inconsistent with his description of symptoms and limitations. While the extent of plaintiff's daily activities was not a particularly strong factor supporting the credibility assessment, a rational ALJ could perceive some inconsistency when comparing plaintiff's self-care and child care activities with the extreme degree of symptoms and limitations he described. The inconsistency could properly be considered as one factor in the credibility assessment. SSR 96-7p.

Plaintiff also refers to consistency between his testimony and that offered by Ms. Milazzo. Ms. Milazzo did not testify at the hearing and her affidavit was not prepared until after the ALJ reached a decision (R. 23-61, 272-276). Evidence that was not presented until after the decision is not grounds to reject a credibility determination.

In sum, the Court will defer to the ALJ's credibility assessment, which has not been shown to be patently wrong.

### VII. Vocational Testimony

Plaintiff argues that vocational testimony regarding a hypothetical individual was consistent with his allegations of disability from debilitating back pain and anxiety attacks. Because the ALJ did not fully accept plaintiff's description of his symptom severity, the ALJ was not obligated to rely on this aspect of the vocational testimony.

-14-

## VIII.  Conclusion

The Commissioner's final decision denying Michael Jon Thomas Gray's June, 2007, applications for disability benefits and supplemental security income is AFFIRMED.

DATED:   September 30, 2010  .

    S/ Philip M. Frazier
**PHILIP M. FRAZIER**
**UNITED STATES MAGISTRATE JUDGE**